**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )      **Case No. 14-10172-01-JAR** |
| | ) |
| **ERNEST OPOKU ACHEAMPONG,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## <u>MEMORANDUM AND ORDER</u>

Before the Court is Defendant Ernest Opoku Acheampong's Motion to Dismiss the

Indictment (Doc. 21), in which he argues that the Indictment fails to allege all essential elements

of the crime charged.  The motion is fully briefed and the Court heard oral argument on February

18, 2015.  The Court has considered the filings and the arguments made by the parties at the

hearing and is prepared to rule.  As described more fully below, the Court denies Defendant's

motion to dismiss.

## I.     Background

The Indictment in this matter charges as follows:

That on or about October 29, 2004, within the District of Kansas
and elsewhere, the defendant,

ERNEST OPOKU ACHEAMPONG,

knowingly and intentionally obtained United States citizenship by
naturalization contrary to law, in that he became a naturalized United
States citizen after falsely representing to the United States government
during the naturalization process that he had never been ordered to be
deported from the United States, that he had never applied for any kind of
relief from deportation, and that he never used any other name other than
the name under which he was seeking naturalization, when, in fact, he
entered the United States in 1994 without documents, applied for asylum
under the name Michael Smith, had his asylum claim denied, was ordered

deported from the United States but failed to leave the United States, thereby committing perjury in violation of Title 18, United States Code, Section 1621, and making a material false statement to an agency of the United States government, in violation of Title 18, United States Code, Section 1001(a), in connection with the submission of his Form N-400 containing those false and fraudulent statements and representations, all in violation of Title 18, United States Code, Section 1425.

## II.    Discussion

Under the Fifth Amendment, 'no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury alleging all the elements of the crime."[1]  An Indictment is sufficient if it meets minimal constitutional standards, which must be determined by "practical rather than technical considerations."[2]  It is sufficient if it (1) sets forth the elements of the crime charged; (2) places the defendant on fair notice of the charges against which he must defend; and (3) enables the defendant to assert a double jeopardy defense.[3]  It is generally sufficient if the indictment sets forth the offense in the words of the statute, "'as long as those words themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'"[4]  "An indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true."[5]

---

[1]U.S. Const. amend. V.

[2]*United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997); *see also United States v. Hathaway*, 318 F.3d 1001, 1009 (10th Cir. 2003).

[3]*Dashney*, 117 F.3d at 1205; *United States v. Doe*, 572 F.3d 1162, 1173 (10th Cir. 2009).

[4]*Hathaway*, 318 F.3d at 1009 (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

[5]*United States v. Redcorn*, 528 F.3d 727, 733 (10th Cir. 2008).  "When reviewing a post-verdict challenge to an indictment asserting the absence of an element of the offense, the indictment is sufficient if it contains 'words of similar import to the element in question.'"  *Dashney*, 117 F.3d at 1205 (emphasis added) (citing *United States v. Brown*, 995 F.2d 1493, 1505 (10th Cir. 1993)).  The Government mistakenly argues that this liberal standard also applies to a pre-verdict challenge to the Indictment.  Nonetheless, Defendant argued at the hearing that even under

Defendant seeks dismissal because the Indictment does not specify whether the offense arises under § 1425 subsection (a) or (b) and because it does not include the element of "procurement" required for a subsection (a) offense.  The statute provides:

> (a) Whoever knowingly procures or attempts to procure, contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or of citizenship; or
> (b) Whoever, whether for himself or another person not entitled thereto, knowingly issues, procures or obtains or applies for or otherwise attempts to procure or obtain naturalization, or citizenship, or a declaration of intention to become a citizen, or a certificate of arrival or any certificate or evidence of nationalization or citizenship, documentary or otherwise, or duplicates or copies of any of the foregoing–
> Shall be fined under this title or imprisoned . . . .[6]

There is no Tenth Circuit decision construing § 1425, but most of the circuit courts to construe the elements of an offense under this statute distinguish between offenses under subsections (a) and (b).  However, the Sixth Circuit has held that the statute does not define two crimes, but instead provides "two means by which unlawful naturalization can be obtained. Under the statute, one can procure naturalization 'contrary to law' (§ 1425(a)) or naturalization to which one is not entitled (§ 1425(b))."[7]  But even under the Sixth Circuit's interpretation, a violation of § 1425 requires that the defendant "procure" naturalization either contrary to the law or to which one is not entitled.[8]  The Government maintained at oral argument that this Defendant is charged with procuring naturalization contrary to law by committing perjury and by making false statements on his application for naturalization under § 1425(a).

---

this standard, there are no words of similar import used in the Indictment.

[6]18 U.S.C. § 1425.

[7]*United States v. Damrah*, 412 F.3d 618, 622 (6th Cir. 2005).

[8]*Id.*

3

Several circuit courts have outlined the essential elements of a claim under § 1425(a).[9] These circuits generally agree that there must be a causal connection between the illegal conduct and the naturalization, based on Supreme Court jurisprudence interpreting the word "procurement" in the naturalization context.[10]  The majority opinion in *Kungys v. United States* held that "procurement" requires "that citizenship be obtained as a result of the application process in which the misrepresentation or concealments were made."[11]  Moreover, under the plurality decision, the Government must show that it is fair to infer that the citizen was actually ineligible for naturalization.[12]

The Indictment in this case does not use the word "procurement."  Instead, it charges that Defendant "knowingly and intentionally obtained United States citizenship by naturalization contrary to law."  Defendant argues that the word "obtained " is insufficient because "procurement" has a specific legal meaning in the context of naturalization, and is therefore an essential element of a § 1425(a) offense.  But the Indictment in this case goes beyond alleging that Defendant "obtained naturalization contrary to law," and describes the factual basis for the charged offense: that Defendant "became a naturalized United States citizen <u>after</u>" making false

---

[9]*United States v. Shordja*, No. 14-1328, 2015 WL 249849, at *2 (6th Cir. Jan. 21, 2015); *United States v. Chala*, 752 F.3d 939, 945– 48 (11th Cir. 2014), *cert. denied*, 2015 WL 133050 (U.S. Jan. 12, 2015); *United States v. Mensah*, 737 F.3d 789, 803 (1st Cir. 2013), *cert. denied*, 134 S. Ct. 1912 (2014); *United States v. Latchin*, 554 F.3d 709, 712–13 (7th Cir. 2009); *United States v. Alferahin*, 433 F.3d 1148, 1154–55 (9th Cir. 2006); *United States v. Aladekoba*, 61 F. App'x 27, 28 (4th Cir. 2003).

[10]*See Latchin*, 554 F.3d at 712 (discussing *Kungys v. United States*, 485 U.S. 759 (1988)).  *But cf. Shordja*, 2015 WL 249849, at *2 (considering § 1425(a) jury instructions that include a causation element that "an honest statement would predictably have disclosed other facts that are relevant, significant, that is, to the defendants qualifications to be a citizen").

[11]485 U.S. at 776.

[12]*Id.* at 784 (Brennan, J., concurring); *see also Mensah*, 737 F.3d at 809 ("[T]he government's burden was to prove beyond a reasonable doubt that the truthful information would have raised a 'fair inference' of ineligibility for naturalization.").

representations "to the United States government <u>during the naturalization process</u>."  The

Indictment sets forth three different false representations Defendant made during that process.

The Court is to determine the sufficiency of the Indictment by practical, not technical,

considerations.  Under this standard, the Court finds that the allegations in the Indictment, taken

as true, fairly allege the causal connection required by the "procurement" element of § 1425(a).

It alleges that the false representations were made during the naturalization process and that

Defendant became a naturalized citizen after making these representations.  Practically speaking,

the Indictment sufficiently alleges that truthful information about Defendant's prior entry into

the United States in 1994 without documents, his application for asylum under a different name

that was denied, and his disregard of a deportation order, would have raised a fair inference of

ineligibility for naturalization.  The words used in this Indictment fully apprise Defendant,

without any ambiguity or uncertainty, of the elements of an offense under § 1425(a).  The Court

therefore denies Defendant's motion to dismiss.

**IT IS THEREFORE ORDERED BY THE COURT** that  Defendant Ernest Opoku

Acheampong's Motion to Dismiss the Indictment (Doc. 21) is **denied**.

**IT IS SO ORDERED**.

Dated: March 3, 2015

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE